**VEHLE et al. v. WAGNER et al.**

No. 4475.

Court of Civil Appeals of Texas. El Paso.
Dec. 5, 1946.

Rehearing Denied Jan. 16, 1947.

Clark, Craik, Burns & Weddell, of Fort Worth, for appellants.

Donald Campbell and L. A. Thompson, both of Tulsa, Okl., Hamilton McRae, of Midland, Ernest E. Sanders, of Fort Worth, and Turner, Rodgers & Winn and Geo. S. Terry, all of Dallas, for appellees.

PRICE, Chief Justice.

This is an appeal from the judgment of the District Court of Andrews County. The action was instituted by Otto Vehle and others, suing in their own behalf and in behalf of other stockholders of the B-R Ranch Royalties Company, a defunct corporation, against D. A. Seran, H. J. Wagner and several of their successors in title. Plaintiffs sought to recover title to a 1/64th non-participating royalty interest in 32 sections of land in Andrews and Winkler Counties, most of the sections being situated in Andrews County. It was likewise sought to set aside on the ground of fraud, two conveyances by the B-R Ranch Royalties, one dated the 25th day of September, 1941, purporting to convey to H. J. Wagner a 1/128th non-participating royalty interest in the said 32 sections of land, the other dated March 27th, 1941, purporting to convey 1/128th non-participating royalty interest in said' lands to D. A. Seran. At the close of the evidence the court sustained a motion of defendants to instruct a verdict in their favor. The grounds set up in the motion were in substance that there was no evidence to support the allegations of plaintiff's petition; plaintiffs failed to show any title in themselves to the land in controversy; their cause of action, if any they had, was barred by the four years statute of limitations; defendants were entitled to judgment by reason of being innocent purchasers of any equitable right or title asserted by plaintiffs; plaintiffs were estopped to deny the officers of the B-R Ranch Royalties of the right to make the conveyances attacked in the suit, and further were estopped from bringing the suit after their inaction after being acquainted with all of the facts; that plaintiffs could not recover because they elected to ratify the conveyances in question by suing their agents for recovery of the proceeds received from the sale of such royalty interests. Plaintiffs duly perfected this appeal from said judgment. Hereinafter the parties will be designated as they were in the trial court.

The points of error urged by plaintiffs may be summarized as follows: That the two conveyances assailed were beyond the charter powers of the B-R Ranch Royal-ties Company to make and hence did not divest the title, likewise voidable for the same reason; further that the two assailed conveyances were fraud on the said corporation and defendants holding under said conveyances each and all at the time they took their respective conveyances had notice of such fraud. There is urged a trial error in the rejection of evidence offered by plaintiffs.

This verdict having been instructed, this appeal calls for a careful consideration of the evidence. The B-R Ranch Royalties Company was granted a charter on the 5th day of May, 1927. The capital stock was 30,000 shares, non-par value. The incorporators were G. S. Anderson, M. W. Boyle and R. A. McArthur. In payment of his subscription to the capital stock Anderson paid $29,800 by conveying to the corporation a 1/64th non-participating royalty interest in said 32 sections of land situated as aforesaid in Andrews and Winkler Counties. M. W. Boyle and R. A. McArthur each paid the sum of $100 in cash for the shares each had subscribed. The incorporation was under Section 37 of Article 1302, Rev.Stat.1925, which provides as to the power conferred as follows:

"To establish and maintain an oil business with authority to contract for the lease and purchase of the right to prospect for, develop and use coal and other minerals, petroleum and gas; also the right to erect, build and own all necessary oil tanks, cars and pipes necessary for the operation of the business of the same."

The charter further provides that the above named incorporators should serve as directors for the first year and until their successors were selected. A short time after filing of the charter there was a meeting of the stockholders. Among other resolutions the following was passed:

"Resolved by the Stockholders of the B-R Ranch Royalties, in meeting duly assembled, that the President and Secretary of this corporation, representing a majority of the Board of Directors, be and they are hereby authorized, empowered and directed to sell, from time to time, any part or all of the royalty properties of this corporation for such consideration and upon

such terms as in their judgment and discretion will serve the best interests of this corporation, and to execute deed or deeds of conveyances to such purchaser or purchasers for and on behalf of this corporation; and the said directors are likewise hereby authorized, empowered and directed to trade in such (royalty) properties (as well as oil, gas and mineral royalties) from time to time, and purchase for and on behalf of this corporation any such oil, gas and mineral leases royalty or royalties, from time to time, for such consideration and terms as in their judgment and discretion will serve the best interests of this corporation, hereby ratifying and confirming all such acts as the said directors may do in the premises by virtue of this resolution. * * *"

Likewise it was provided that the Board of Directors should have power to pass By-laws for the corporation. On the 11th day of May, 1927, the Board of Directors enacted By-laws. These By-laws provided for annual stockholders meetings; that the directors should serve until their successors were chosen. G. S. Anderson seems to have been elected and served for a time as President and R. A. McArthur as Secretary. It was not shown that any other annual meeting was ever held by the stockholders of the corporation.

There was introduced the minutes of what is denominated "Minutes of Annual Meeting of Directors." This meeting purports to have been held at 3 o'clock P. M. on the 15th day of October, 1933. The 15th day of October is the date set for the annual meeting of stockholders under the By-laws of the corporation. It recites that directors J. G. Brown, L. Smith and A. Wright were present and constituted a quorum; that officers were elected as follows: President, J. G. Brown, Vice-President, L. Smith, Secretary, E. Brougher, Treasurer, J. G. Brown, Asst. Secretary, A. Wright. The meeting fixed the salary of the president at $1200 a year. The president was authorized to employ Walter P. Luck as attorney on retainer of $1200 per year. The salary of the vice-president was fixed at $25 per year, and the salary of the Assistant Secretary was fixed at $50 per month.

The records of B-R Ranch Royalties showed that on March 27, 1941, a resolution was passed by the Board of Directors authorizing the president, J. G. Brown, to sell and convey to D. A. Seran a 1/128th royalty interest in said 32 sections. On March 27, 1941, the B-R Ranch Royalties Company, acting through defendant Brown, executed and delivered to D. A. Seran a deed to the 1/128th royalty interest in the said 32 sections aforesaid. This deed recites $10 and other good and valuable considerations. Seran seems to have paid $2250 consideration. He so testified, Brown so testified, and the books of the corporation so show. Seran, who was a lawyer, testified he was furnished with no abstract of title but he thought he personally examined the records of Andrews County. Each defendant herein is to an extent a vendee subsequent to Seran, and claims to an extent under such conveyance.

On the 25th day of September, 1941, purporting to act by virtue of a resolution of the Board of Directors of the B-R Ranch Royalties Company, J. G. Brown as president thereof, and A. Wright as secretary, executed and delivered to H. J. Wagner a deed to a 1/128 interest in and to the royalty in the lands in controversy. Each and all of the defendants to an extent claim under this conveyance. The consideration recited is $10 and other good and valuable considerations. There is testimony that the consideration was $2250; testimony likewise that it was $1900.

On the date of this conveyance H. J. Wagner and Howard Anderson were engaged in the real estate business in Denver, Colorado. Anderson was a brotherinlaw of J. G. Brown, the president of B-R Ranch Royalties. There is evidence to raise the issue that at the time of the conveyance the agreement between Brown on one part and Wagner and Anderson on the other was that Brown was to share one-half in the interest conveyed to Wagner, and the firm of Wagner and Anderson in the other half.

The conveyances to Seran and Wagner seem to have covered all available assets of B-R Ranch Royalties Company. Subsequent thereto it failed to pay its franchise tax and the Secretary of State forfeited its

right to engage in business, and it is now defunct. In 1927 plaintiff Otto Vehle became the owner of 30 shares of the capital stock of the corporation, and is still the owner thereof.

The business engaged in by the B-R Ranch Royalties Company during its existence is not very clear. From the corporate records introduced it is clear that it held and conveyed oil interests other than those in controversy.

Plaintiffs introduced in evidence a conveyance dated June 17, 1935, from the corporation to J. G. Brown, signed by L. Smith as Vice-President, and attested by A. Wright as Assistant Secretary, purporting to convey to Brown a royalty interest in section of land in Ward County, likewise a deed from Brown to one W. T. Funk dated December 5, 1936, conveying this property. Affixed to this deed was $16 cancelled United States revenue stamps. A deed likewise dated June 17, 1935, executed on behalf of the corporation by L. Smith as Vice-President, attested by A. Wright as Assistant Secretary, purporting to convey to W. P. Luck a royalty interest in section of land in Ward County, deed from Luck to W. T. Funk dated December 28, 1938, conveying a part of said mineral interest. To this deed is attached $4 of cancelled United States revenue stamps. A deed from Luck to Elsie Voome, dated December 21, 1938, conveying another fractional royalty interest in said Ward County section of land. This deed had attached $4.50 cancelled United States Internal Revenue stamps. Luck and Brown, previous to these conveyances, had mortgaged the interest conveyed to them by the corporation prior to selling same, as aforesaid. This Ward County land is not involved in this suit. Plaintiffs' purpose in introducing same was to establish the fraud on the part of Brown, the president, in dealing with the corporation, likewise on the part of Luck, who had been at one time Vice-President of the corporation and had been its attorney, and may have been such attorney on the date of the conveyance to him.

On April 26, 1939, there was filed in the district court of Tarrant County cause No. 25521–a, entitled W. A. Searce et al. v. Walter P. Luck et al. It is shown by the lis pendens notice filed in the County Clerk's office of Andrews County on April 27, 1939, that W. A. Searce, D. T. Maddox and Mrs. Ella M. Davis were plaintiffs, and Walter P. Luck, J. G. Brown and C. A. (Eileen) Wright were defendants; further that it was a class suit. It shows that it is alleged that defendants had misappropriated certain property of plaintiffs, and a recovery is sought in the sum of $100,000. An equitable lien is claimed on the property herein in controversy, and a recovery was sought in connection with the foreclosure thereof.

This suit was terminated by final judgment on January 30, 1940, sustaining general exception to plaintiffs' petition. This suit was filed on the 26th day of April, 1939. In the evidence there is a third amended original petition in this case. This amended petition was filed by John F. Pryor and Frank W. Lobaugh as plaintiffs. The plaintiffs filing the original petition were dropped and additional defendants were added. The original character of the action as a class suit is sought to be maintained. The B–R Ranch Royalties Company is added as a defendant, and the suit is alleged to be brought in its behalf. There is an averment that plaintiff Pryor is a stockholder in the B–R Ranch Royalties Company.

It is averred that properties of the Hendricks Ranch Royalties, Monarch Royalty Corporation and Winkler Royalties Association and of other companies in which plaintiffs were interested were by various transfers without consideration placed in the B–R Ranch Royalties Company, which had transferred the properties to the individual defendants in the cause, who had sold same and diverted the proceeds to their own use. The prayer was for a recovery and the sale of properties and division of proceeds. Mr. H. C. Ray is one of the attorneys signing this petition. As has been stated, this suit was terminated by final judgment on January 30, 1940, a general exception was sustained to plaintiffs' petition. It is recited in the judgment that the suit was originally filed by W. A. Searce, D. T. Maddox, Mrs. Ella M. Davis and Mrs. T. B. Binkley, and that all of

them on the 19th day of June 1939 by order duly entered in the case were dismissed from said suit as plaintiffs.

On February 2, 1940, a case styled Edward C. Griesel, et al, vs. C. E. Simmons, et al, No. 27713–a on the docket was filed in the district court of Tarrant County. The plaintiffs were Edward C. Griesel and others. The defendants were C. E. Simmons, Walter P. Luck, J. G. Brown, C. A. (Eileen) Wright, Midfield Royalties, Inc. of Texas, and B–R Ranch Royalties. This was a class suit and some of the plaintiffs were stockholders in the B–R Ranch Royalties Company. The allegations of the petition are in substance about the same as in the third amended original petition in the Searce vs. Brown case. A lis pendens notice of this suit was filed in Winkler County on the 3rd day of February, 1940. On October 17, 1940, this suit was dismissed on the application of plaintiffs at the cost of plaintiffs.

It is not contended by any of the parties that the lis penden notices constituted constructive notice to either of the first vendees of the B–R Ranch Royalties Company or to any of their successors in title. Before either Seran or Wagner received their respective deeds both of the suits in question had ceased to pend. This being true there was no constructive notice. Roseborough v. Cook, 108 Tex. 364, 194 S.W. 131. The question of actual notice will be later discussed.

If the deeds to Seran and Wagner are voidable because the corporation under its charter had not the power to execute same, then this is a controlling issue of the case and it will not be necessary to discuss fraud.

As has been stated, the charter powers were those prescribed by Section 37 of Article 1302. In 1930 the 41st Legislature amended Art. 1302 by adding section 92, Vernon's Ann.St. Art. 1302, subd. 92, which in substance authorized incorporation for the purpose of dealing in royalties and other·mineral interests. There is recited in the emergency clause that at the time there was no law authorizing a corporation with such power. Nowhere prior or subsequent to the enactment of said amendment is the power to hold or sell royalty interests expressly denied to corporations.

As has been heretofore stated, the stock of this corporation was without par value. Of the 30,000 shares constituting the total capital stock, G. S. Anderson subscribed for 29,800 thereof and paid for same by the transfer of a $\frac{1}{64}$ non-participating royalty in said 32 sections. Said royalty was taken in for a value of $29,-800. It is thought the issuance of this stock to him in no way violated Sec. 6 of Article 12 of the Constitution of the State, Vernon's Ann.St., which in substance forbids the issuance of stock except for money paid, labor done or property actually received. This royalty was almost the entire capital stock of the corporation. It is thought especially with the authority of the stockholders the corporation might sell same, however it is not thought the stockholders may authorize the corporation to engage in that business which the law forbids, or enlarge its charter powers.

Section 37 of Article 1302 no more authorizes a corporation to hold and collect the proceeds of royalty than it does to deal therein. A corporation acquiring property in which its charter does not authorize it to deal or·hold should and must have the power and it may be the duty to dispose of same.

We hold that the sales to Wagner and Seran were neither void or voidable as being beyond the power of the corporation.

It is urged that this royalty constituted the sole remaining assets of the corporation, and those two sales were practically a dissolution of the corporation, and hence were beyond the power of the directors. If the corporation was not authorized to deal in or hold royalties unless incidental to its other powers, its sale was proper. A great burden would be placed on a purchaser of· property from a corporation if every time he was compelled in the absence of something· calling for an investigation to examine the internal financial affairs of his corporate vendor. In our opinion the conveyances were neither void or voidable as beyond the power of the directors. If the above holding be correct, then it fol-

lows that the legal title passed to Seran and to Wagner. This being true, before these two conveyances can be set aside for the reason the officers of the corporation were acting in fraud of the corporation, the burden is on plaintiffs to bring home to Seran and Wagner notice of such fraud. Even though either or both Seran and Wagner had notice of such fraud, the burden is upon the plaintiffs to show notice of such fraud on the part of their successors in title. Grace v. Wade & Mains, 45 Tex. 522; Peterson v. McCauley, Tex. Civ.App., 25 S.W. 826; Kinard et al. v. Sims, Tex.Civ.App., 53 S.W.2d 803 (W. R.) and authorities cited therein. If Seran was an innocent purchaser, it is immaterial as to notice of fraud to his subsequent vendees. Beyond question as to Wagner there is evidence to raise the issue of his notice of fraud and his active participation therein. His testimony clearly raises the issue of fraud.

■■■ There is no direct evidence that Seran either had notice or participated in any fraud in the conveyance of the ⅟₁₂₈ royalty interest to him. He had gone to school with J. G. Brown and knew him, and a comparatively short time after the acquisition of this property sold same at a considerably advanced price. He said he thought he had made an examination of the records of Andrews County before he made the purchase. There is no evidence that in his search he found the lis pendens notice in the case of Searce v. Luck. It is true that the lis pendens notice in the case was on file in the records of the County Clerk of Andrews County, but it had ceased to have any efficacy as constructive notice. Granted for the purpose of this discussion that he had discovered such lis pendens notice, a further investigation would have led to the discovery in fact that the case had resulted in judgment in favor of defendants.

This judgment, insofar as the pleadings went, was binding on all the stockholders of the B–R Ranch Royalties Company. It can not be that one properly instituting a class suit who withdraws therefrom is not bound by the judgment if the suit is prosecuted on behalf of the corporation by others. In order for plaintiffs to recover as stockholders of the B–R Ranch Royalties corporation it must be that the B–R Ranch Royalties corporation would be entitled to recover. The rights asserted by a stockholder are derivative. It is thought that the judgment in the case of Searce v. Luck is as to the matters asserted in the suit a binding determination against the corporation and all of the stockholders.

■■■ From actual knowledge that the officers of a corporation have been charged in a class suit with fraudulent conveyance of the property of the corporation to themselves, notice can not be fairly implied that a subsequent sale by such corporation acting through such officers to a third party or parties is fraudulent. The above proposition is fortified when applied to a situation where the final judgment rendered in the cause is in favor of the officers charged with fraud and rendered prior to the purchase by the party or parties sought to be charged with notice of fraud.

■■■ The defendants Stanolind Oil & Gas Company, Longcope and Sloan, each and all before purchasing had actual notice of the lis pendens notice as hereinbefore described. This applies, of course, to the case of Searce v. Luck. Longcope and Sloan each relied on the investigation of title by the Stanolind Oil & Gas Company. Stanolind Oil & Gas did make investigation of the facts disclosed by the lis pendens notice, and certified copy of the proceedings and judgment were obtained. This, of course, disclosed that the judgment in the cause was unfavorable to the plaintiffs therein, in short, that plaintiffs did not have the right that the lis pendens notice sought to protect against purchasers until the disposition of the case. One of the purposes of a lis pendens is to protect the rights of the party filing same in the matters in suit pending final judgment. It is confined to matters in suit. 17 R.C.L. p. 1014. Actual knowledge can not impose a greater duty than constructive notice would have imposed. In view of the disposition of the case knowledge thereof and of the proceedings therein was insufficient to impose the duty of inquiry upon the purchasers

from the corporation, or upon the vendee of such purchasers.

The case of Hexter v. Pratt, Tex.Com. App., 10 S.W.2d 692, in Court of Civil Appeals 283 S.W. 653, does not in any way conflict with the above holding. In that case the duty of inquiry arose from the fact that there was knowledge of the equity asserted and of the fact that it had not been determined. The notice was strictly as to matters asserted in the suit. Here all rights and equities asserted had been determined adversely to the parties here asserting that a duty of inquiry arose from that knowledge. The facts alleged were held to warrant no legal relief.

: Stanolind Oil & Gas Company did make an investigation. One of the attorneys filing the suit was interviewed. He purported to execute a release to the asserted rights of the plaintiff in the suit. This release, so far as the evidence goes, lacks legal efficacy. However, in our view of the matter, the plaintiffs that started to prosecute the suit were bound by the judgment in the suit. There is no evidence that any knowledge of the asserted fraud on the parts of the officers of the corporation was obtained, in fact the evidence seems to negative any such notice or knowledge.

 To invalidate the conveyance to Seran he must have had notice of fraud, if any, of the officers of the corporation. Lacking, we think, is any evidence of notice of fraud on the part of Seran. Seran seems to have collected the full consideration for the sale subsequently made by him. There is no evidence that he either did or had agreed to recognize any right of the officers after the sale to him; no evidence of any fraud on his part or notice of any fraud on the parts of the officers of the corporation. If there was fraud, in order to set aside the conveyance to him notice thereof must not only be brought home to him but likewise to his subsequent vendees.

There was evidence of fraud on the part of the president of the corporation in the conveyance to Wagner; evidence that Wagner had notice thereof and participated therein. As to the defendants whose titles depend in whole or in part on this conveyance it is thought that the evidence is insufficient to charge them with notice of the equities of the corporation with reference to the conveyance to Wagner.

Plaintiffs' points of error with reference to the exclusion of testimony are thought to be without merit, at least under the record neither presents reversible error.

It is ordered the judgment be in all things affirmed.