GUARDIAN FINANCIAL CORPORATION
OF BEAUMONT, Appellant,

v.

Frank T. ROLLINS, Appellee.

No. 6138.

Court of Civil Appeals of Texas.

Beaumont.

March 13, 1958.

Amended Motion for Rehearing Denied
April 23, 1958.

Iron, Cain, Cocke & Magee, Houston, for appellant.

W. G. Walley, Jr., W. E. Dryden, Beaumont, for appellee.

R. L. MURRAY, Chief Justice.

Appellee Frank /T. Rollins recovered judgment in the district court of Jefferson County against appellant, Guardian Financial Corporation of Beaumont, for the sum of $29,187.06, and the appellant has duly perfected its appeal to this court.

The appellant is a Texas corporation engaged in the business of making small loans. Appellee was the manager of its business in Beaumont. Appellee was also an agent for Home Life and Accident Insurance Company of America, for which company he countersigned policies of credit life and credit health and accident insurance for borrowers from the appellant. In such policies of insurance appellant itself was first beneficiary. The amount of the premiums for such policies were usually not paid by the borrower-insured, but the amount of such premium was advanced by the appellant and added to the amount of his loan. The appellant forwarded to Home Life and Accident Insurance Company 15 percent of such premiums and retained 85 percent thereof as its commission on such insurance. Rollins executed a transfer and assignment to the appellant of all his right, title and interest to all commissions or claims for commissions for writing and countersigning said policies. Rollins was manager of the appellant's office at Beaumont from February 14, 1953, until July 10, 1954. He was paid a salary of $103.85 per week. The gross premiums on the policies written during this time amounted to $34,336. After his discharge, or after his resignation was accepted, Rollins made demand March 30, 1956, on appellant for all the commissions retained by it, which demand was refused and suit was brought on April 6, 1956.

The appellee in his original petition alleged in detail the above facts and also alleged that General Administration Company, a foreign corporation, managed the affairs of the appellant and sued both corporations for the money retained as commissions for writing such insurance.

The appellant and General Administration Company answered by varied exceptions to the original petition and answered by general denial and special answers. It alleged that General Administration Company was employed by appellant to furnish advice, recommendations and supervision of its business affairs; that appellant was engaged in the lending business and it required its borrowers to acquire credit life and credit health and accident insurance, and that all of said insurance was written under and by virtue of Article 3.53 of the Insurance Code of Texas, V.A.T.S., regulating the writing of credit life and credit health and accident insurance; that Rollins was a "lender agent" as that term is defined in Subsection D of Section 1 of said Article 3.53, and that he was in the business of making loans as an employee of the appellant; that under said Article 3.53 it is provided that commissions shall be received by lenders upon such insurance and that by reason thereof it entered into an agreement whereby it is agreed that all such insurance written upon loans made by it, where the borrower chose Home Life and Accident Insurance Company, that appellant would receive a commission of 85 percent of the premiums paid, and it denied that either the appellant or General Administration Company for Home Life and Accident Insurance Company ever agreed, contracted or had an understanding with Rollins that he would receive any commissions upon any of said insurance. It further alleged that the appellee assigned to it any commissions or claims to commissions in connection with the writing of such insurance, and alleged that by virtue of said written instrument it became the owner of and was entitled to receive and retain all commissions for all such insurance written by Rollins for the purpose of insuring borrowers from it. It also alleged that on February 27, 1953, the appellee executed and delivered to it a release of all claims against it by virtue of having written such policies while he was in its employ. It further alleged that appellant had never entered into any contract with appellee wherein it agreed to pay appellee any sums or amounts on policies of insurance written while in its employ.

It further pleaded that if appellee had any claim of any kind or character as set forth in his petition, all claims originating more than two years prior to April 6, 1956, the date when his petition was filed, are barred by the 2-year statute of limitations.

By his supplemental petition filed, the appellee alleged that the assignment of commissions by him to the appellant under date of February 7, 1953, was wholly without consideration; that the same was wholly void and of no force and effect and is violative of the public policy of the State of Texas, in that it is "incontroverting of Articles 21.09 and 21.11 of the Insurance Code of Texas, viz. amended." He further alleged that the purported release by appellee to appellant presented by appellant in its answer was wholly without consideration, was violative of the public policy of this state so far as the subject matter of this suit is concerned, because the same contravenes Articles 21.09 and 21.11 of the Insurance Code of Texas, as amended.

The appellant, in its supplemental answer, denied all of the allegations in the supplemental petition and specially pleaded that the consideration for the February 27, 1953, agreement was that it made the execution of all such instruments a condition upon which appellee would be appointed its manager and a consideration for it was the making of him manager of its business. It denied that such instrument was in violation of law and alleged

that the instrument was authorized by Article 3.53 of the Insurance Code of Texas. It further answered that if such instruments of February 27, 1953, were not valid as claimed by the appellee in his supplemental petition, then he is estopped to deny the validity thereof in that he accepted the benefits thereof and by reason of acceptance of such benefits he could not now be heard to complain.

The trial of the case was begun before a jury but after the pleadings of the parties were read and evidence adduced thereon, it was agreed by the parties that the jury chosen should be discharged and that all matters of fact as well as of law should be determined by the court without the intervention of a jury. The parties stipulated that "the following are the facts pertinent to the issues in this cause and that the trial court may make a determination of this cause based upon the law as applicable to such facts as hereinafter stipulated:

1.

That Rollins was employed on January 27, 1953, as shown in defendant's Exhibit No. 5.

2.

That about February 14, 1953, he was named manager of Guardian Financial Corporation of Beaumont, under the terms of defendant's Exhibit No. 5, and worked to and including July 10, 1954, at which time H. K. Mason accepted Rollins' resignation, but refused to permit Rollins to continue to work the two weeks which Rollins had offered to work under Rollins' resignation, identified as Plaintiff's Exhibit No. 4.

3.

That Rollins' salary was paid weekly and that at the time of his resignation his salary was $103.85 per week.

4.

That on February 27, 1953, Rollins executed defendant's exhibits 2, 3 and 4, and that H. K. Mason, Assistant Secretary of the Guardian Financial Corporation of Beaumont, would have fired Rollins, thereby terminating his employment, if he had not executed the same.

5.

That the $1 recited in defendant's Exhibits 2, 3 and 4, was not actually paid.

6.

That Rollins was appointed agent to countersign policies of credit life and credit health and accident insurance, by Home Life & Accident Insurance Company, as authorized by Plaintiff's Exhibits Nos. 1 and 2, and did so countersign 766 policies, as authorized representative of Home Life & Accident Insurance Company, during the time he was employed by Guardian Financial Corporation of Beaumont.

7.

That the gross premiums on said 766 policies of insurance was $34,336.

8.

That Home Life & Accident Insurance Company did not expressly agree orally or in writing to pay Rollins any commission to countersign the policies as such authorized representative.

9.

That on July 12, 1954, Rollins executed defendant's Exhibit No. 6, for the consideration of $311.55; that of the $311.55 paid, $103.85, less normal deductions, was earned for his services to July 10, 1954, and the balance paid was an amount equivalent to two weeks rate of pay, less normal deductions.

10.

That of the $34,336 in gross premiums on policies of insurance countersigned by Rollins, as authorized representative of Home Life & Accident Insurance Company, $5,167.87 was on loans in excess of $1,000.

**11.**

That Guardian Financial Corporation of Beaumont is duly incorporated under the laws of the State of Texas, and engaged in the loan business.

**12.**

That General Administration Company is a corporation engaged in the auditing business and audits records of the various Guardian Financial Corporations, and furnishes expert advice to such corporations on their business operations, and that it also furnishes the services of H. K. Mason, who performs the duties as set forth in his deposition dated June 29, 1956.

**13.**

That all the capital stock of Guardian Financial Corporation, and all of the capital stock of General Administration Company, is owned by Guardian Consumer Finance Corporation, a foreign corporation.

**14.**

That Rollins, from March 31, 1953, to and including July 10, 1954, was a duly licensed life insurance agent under the laws of the State of Texas.

**15.**

That on each of the 766 policies of credit life and credit health and accident insurance, the borrower borrowed the gross premium for such insurance from Guardian Financial Corporation of Beaumont, which gross premium was included in the total amount of such borrower's note.

**16.**

That Guardian Financial Corporation remitted 15 percent of such gross premium to Home Life & Accident Insurance Company, within two weeks from the date of such policy and retained the 85 percent.

**17.**

That such 85 percent was retained by Guardian Financial Corporation of Beau-

mont, pursuant to the two letters designated as defendant's Exhibits 7 and 8.

**18.**

That the 766 policies of insurance were written on the policy form of which defendant's Exhibit No. 9 is a true copy.

**19.**

That Home Life & Accident Insurance Company was engaged in the business of writing credit life and credit health and accident insurance.

**20.**

That neither Guardian Financial Corporation of Beaumont, nor General Administration Company, ever expressly, orally or in writing, agreed to pay Rollins any portion of the 85 percent of the gross premiums written by it, and never did pay any portion thereof to Rollins.

**21.**

That the gross premiums on each policy was due when each policy was written.

**22.**

That Guardian Financial Corporation of Beaumont was actually repaid the money lent to each borrower as the same was paid on the maturity date of each borrower's note.

**23.**

That the first demand that plaintiff ever made for said 85 percent of the gross premiums was on March 30, 1956, and that that date was the first knowledge that defendant ever had that plaintiff was claiming such monies.

Included in the statement of facts, after the above stipulations, is the employment contract of the appellee by the appellant, the resignation of the appellee, the assignment of insurance commissions by appellee to appellant, letter from appellee to Home Life & Accident Insurance Company authorizing it to pay all commissions to his employer, Guardian Financial Cor-

poration of Beaumont, and a release of Home Life & Accident Insurance Company from any claims by appellee, applications for appointment of appellee as agent for Home Life & Accident Insurance Company and the following two letters, one from Howard V. Noll of General Administration Company, Stamford, Connecticut to Glynn E. Hall, Home Life & Accident Insurance Company, Dallas, Texas, and reply letter from Hall to Noll. These two letters, called defendant's Exhibits Nos. 7 and 8, will be copied and referred to later in this opinion. The appellee relies upon the execution and contents of these two letters as a contract between the appellant and the insurance company as being a contract for his benefit, and maintains that his cause of action is supported by such letters as a contract for his benefit which can be enforced by him.

The trial court rendered judgment in behalf of the appellee and against the appellant, Guardian Financial Corporation of Beaumont, and that appellant should take nothing against General Administration Company. The trial court filed its findings of fact and also the following conclusions of law:

"1. The court concludes that the letter agreement designated as defendant's Exhibits 7 and 8 must be construed as granting Guardian Financial Corporation of Beaumont the privilege of delaying payment of that portion of the gross premium designated as the commission from the date of the writing and issuance of each policy, with respect to which such gross premium became due, to the date the total preminum, including the commission, should be collected by Guardian Financial Corporation of Beaumont from the borrower, and that, by implication from the language used, the commission due the agent of Home Life and Accident Insurance Company for his services in countersigning the policy should be paid by Guardian Financial Corporation of Beaumont to Frank T. Rollins upon its collection of the gross premium from the borrower.

"2. The Court further concludes that to construe such letter agreement as permitting Guardian Financial Corporation of Beaumont to retain the agent's commission specified and thereafter convert the same to its own use and benefit would require the Court to attribute to the parties to the contract an intention to violate the insurance laws of the State of Texas.

"3. The Court further concludes that Frank T. Rollins as agent for Home Life and Accident Insurance Company, was one of the third-party beneficiaries, to the extent of commissions earned by countersigning his principal's policies of credit life and credit life, health and accident insurance written and issued to Guardian Financial Corporation of Beaumont and its respective borrowers.

"4. The Court further concludes that Article 3.53 of the Insurance Code of the State of Texas is not in conflict with Articles 21.01, 21.05, 21.07, 21.09 and 21.21 of the Insurance Code of the State of Texas and with Articles 570a, 571, 578 and 596 of the Penal Code of the State of Texas.

"5. The Court further concludes that no part of the claim and cause of action of the plaintiff, Frank T. Rollins, to recover the commissions due with respect to policies of credit life and credit life, health and accident insurance issued and written by Home Life and Accident Insurance Company through the agency of Frank T. Rollins and now held by Guardian Financial Corporation of Beaumont, is dependent upon any act or omission of the said plaintiff constituting violation of the public policy of the State of Texas.

"6. The Court further concludes that the instruments attached to the stipulations of the parties on file herein as defendant's Exhibits 2, 3 and 4, and designated as 'Assignment of Commissions', 'Order to Pay Commissions' and 'Release' are wholly void, and are of no binding effect in law on the plaintiff, Frank T. Rollins.

"7. The Court further concludes that the writing designated as defendant's Exhibit No. 6 is ineffective to defeat plaintiff's claim to the commissions due him held by Guardian Financial Corporation of Beaumont.

"8. The Court further concludes that the plaintiff, Frank T. Rollins, has failed to prove any cause of action against General Administration Company.

"9. The Court further concludes that the plaintiff, Frank T. Rollins, is entitled to recover from the defendant Guardian Financial Corporation to the extent of the award to plaintiff in the judgment on file herein."

The appellant presents its appeal under eleven points of error. It contends that the trial court erred (1) in concluding that the general release dated July 12, 1954 was ineffective to defeat Rollins's claim, (2) in rendering judgment for Rollins because he did not allege or prove that he had any interest in the funds in question and (3) because he did not have a contract with Home Life whereby he would receive 85 percent or any other portion of the gross premiums as compensation for countersigning policies of insurance, (4) in concluding that Rollins was a third-party beneficiary to the extent of the commissions on the policies of insurance, (5) in holding that the agreement between Home Life & Accident Insurance Company and General Administration Company, acting for appellant, was a contract for the benefit of appellee, he being an agent of Home Life & Accident Insurance Company, (6) in finding that the policies of insurance were actually issued by Rollins, contrary to the agreed statement of facts that Rollins was only the agent of Home Life for the purpose of countersigning such policies, (7) in concluding that by implication under the provisions of the contract between Home Life and Guardian (Exhibits 7 and 8) the commissions should be paid to Rollins, (8) in concluding that defendant's Exhibits Nos. 7 and 8, as permitting Guardian to delay the payment of 85 percent of the commissions until all the gross commissions had been collected from borrowers, (9) in concluding that defendant's Exhibits 2, 3 and 4 were void and of no binding effect in law on Rollins, (10) in holding that the transaction whereby Guardian retained a portion of the commissions was void as being in violation of the provisions of law prohibiting corporations from receiving or retaining any portion of insurance premiums as commissions and (11) in not leaving all the parties as it found them, because the whole transaction between Rollins, Guardian and Home Life was void as being contrary to public policy and in violation of the laws of the State of Texas. (This latter point was conditioned upon the court being of the opinion that such transaction was in violation of the laws of this State).

Appellant's points Nos. 2, 3, 4, 5, 7, and 10 must be sustained. Under the stipulations of fact Rollins did not prove that he had any interest in or right to the funds collected by Guardian and retained by it as commissions for this peculiar kind of insurance. Neither the insurance company which wrote the policies nor the appellant Guardian expressly agreed to pay him any portion of the premiums collected. It is evident that the employment of Rollins was that of manager of the business of Guardian of Beaumont, and that his acts in countersigning policies of credit insurance for persons who borrowed money from Guardian, with Guardian as first beneficiary of such policies, were acts incidental to and a part of his employment. Since there is no express agreement by anyone to pay Rollins anything for his acts in countersigning the insurance policies, the question next arises whether there was a contract made for his benefit, under which he might recover the funds retained by Guardian. The appellee maintains, and the trial court so concluded, that the letter agreement between Home Life & Accident Company, and General Administration Company, acting for appellant Guardian, was a contract for the benefit of appellee Rollins,

and that by implication the commissions on the premiums of such insurance should be paid to Rollins under provisions of such letter contract. We believe such conclusions of law are erroneous. The two letters, defendant's Exhibits Nos. 7 and 8, are as follows:

"General Administration Company
Stamford, Connecticut
"322 Main Street,

March 25, 1952

"Mr. Glynn E. Hall
c/o Home Life & Accident Insurance Company
9001 Denton Drive
Dallas, Texas

"Dear Mr. Hall:

"The week before last when I was in Houston, I talked with you on the telephone and my recollection is that I discussed with you how the commissions on the insurance would be paid to us. I believe I suggested that the procedure we would prefer to follow would be for our Texas offices to pay you the full premium on the insurance and then you would remit the commissions monthly to us in Stamford, Connecticut. I believe you told me at that time that the procedure followed by most of our competitors in the finance business is that they withhold the commission due them and their remittance to you covers only the difference between their commission and the full premium. After giving the matter further thought, we believe that we would prefer to follow the same procedure, i. e., we withhold our commission on the premiums and remit to you only the difference between our commission and the full premium. We understand that our commission is to be 85% of the premium. Therefore, we will remit to you only 15% of the full amount of the premium.

"We have instructed our Texas Managers to send the insurance applications to you twice a month, i. e., on the 15th and end of the month the applications are to be accompanied by a check for the net premium due to you after deducting our commissions. Later on, if the volume of business warrants it, the Managers should send the applications with a check to you weekly but, for the time being, we felt that twice a month would be satisfactory.

"I should appreciate it if you would please let me know whether the above arrangement meets with your approval and oblige. Cordially yours, Howard V. Noll."

"March 31, 1952

"Mr. Howard V. Noll
General Administration Company
822 Main Street
Stamford, Connecticut

"Dear Mr. Noll:

"Thank you very much for your letter of March 25. The procedure as outlined for paying the commissions due Home Life is entirely satisfactory.

"Until such time as the volume of business does warrant more frequent mailing of applications the reporting dates of twice each month will be sufficient.

"If we may be of service in any manner, please let us know and we shall be happy to try to help.

"Sincerely yours, Glynn E. Hall,
Executive Vice-President."

We are unable to find anything in these two letters which suggests anything for the benefit of Mr. Rollins. There is nothing therein which supports the implication that either of the parties thereto intended that any part of the commissions retained by Guardian was ever to be paid to Rollins. In fact, the surrounding circumstances, which may always be considered in determining the intent of the parties, and which in particular may be considered in determining whether the contract between two parties is made for the benefit of the third party, appear to negative any intent to benefit Rollins. Guardian received from Rollins, a short time after the date of his employment as agent at Beaumont, an assignment of any insurance commissions he

might have a claim to and at the same time wrote a letter directing Home Life & Accident Insurance Company to pay any commissions he might have a claim to to his employer, Guardian Financial Corporation, and executed a release to Home Life for any claims by virtue of having written policies of insurance for it. Parties are presumed to contract for themselves. It follows that a contract will not be construed as having been made for the benefit of a third person unless it clearly appears that such was the intent of the contracting parties. Citizens National Bank in Abilene v. Texas & P. R. Co., 136 Tex. 333, 150 S.W.2d 1003. The letter quoted above uses the phrase "our commission" and states we will withhold our commissions and that commissions would be paid to "us". From the surrounding circumstances, we think it is clear that the writer of the letter had no intention of including Rollins in "us" but referred to his employer, Guardian.

The basic contention of the appellee in support of the conclusions of the trial court are to be found in his construction of Article 3.53 of the Insurance Code of Texas, as applied to this controversy. Said Article 3.53 was passed by the Legislature in 1951, and provides for the issuance of credit life insurance and credit health and accident insurance and defines those terms to mean personal insurance in which the insured are borrowers of sums of money not exceeding $1,000 from the lenders who retain an interest in the insurance as security to the loan, and any other personal insurance written in connection with or as part of such loan transaction. The Act defines various terms used therein and defines "lender agent" as any insurance agent who may also be in the business of making loans individually or as employee, agent or officer of any person, corporation or association of persons in the loan business. It defines "lender" as any person, firm, corporation or association of persons engaged in the business of making loans.

Appellee contends, in support of his judgment, that since Guardian was a cor-

poration it is therefore prohibited by Articles 21.01, 21.02, 21.05, 21.07, 21.11, and 21.-21 of the Insurance Code of Texas, from acting as an agent for an insurance company and that it could not collect and retain premiums for the credit insurance involved in this suit. He points out that under Article 21.11 of said Code a licensed agent is prohibited from paying directly or indirectly commissions to anyone not licensed. He contends therefore that the construction placed upon the letter agreement between General, acting for Guardian, and Home Life was violative of said portions of the general insurance code, and, therefore, Guardian had no right to retain the monies which it had received and retained as commission on premiums collected.

Said Article 3.53 provides for the issuance of a new kind of insurance. The appellee has submitted supplemental briefs and articles severely attacking the validity and constitutionality of this statute, arguing that it is in reality a provision permitting loan companies in making loans of $1,000 or less to charge and collect usurious rates of interest. He did not in his pleadings, however, make any attack upon the constitutionality of the statute involved, based upon such grounds as being violative of constitutional inhibitions against usury. The appellee's attack upon said Article 3.53 here is that it attempts to allow a corporation in the loan business to collect insurance premiums indirectly when it could not do so directly, and when it is forbidden to accept assignments of such premiums under the provisions of the named sections of the Insurance Code of Texas.

Whether their action was wise or unwise, constitutional or unconstitutional, the Legislature did create or attempt to create a new type of insurance to be issued in connection with small loans. Under said Article 3.53 a corporation in the loan business is authorized to become a lender agent, to have one of its employees made an insurance agent to write credit life insurance and credit health and accident insurance,

and take and retain the commissions on the premiums for such insurance. Subsections D and E of Section 1, Article 3.53, and the definitions included therein appear to make Guardian a lender and Rollins a lender agent.

 It is apparent that there are some conflicts between some portions of said Article 3.53 and Article 21.05, et seq. However, Section 15 of the original Act of the Legislature, passing said Article 3.53, provides that "all laws or parts of law in conflict with the provisions of this Act are hereby expressly repealed to the extent of such conflict." We deem it logical, therefore, to assume that the Legislature, in passing the Act creating this particular type of insurance, meant to provide that in cases of conflict with the provisions of the general insurance code, the provisions of Article 3.53 should prevail.

The appellee also argues that the construction to be placed upon the letter contract involving commissions, as sought by the appellant, would require the courts to hold that the parties to the contract were attempting to contract in violation of the insurance code and such agreements were therefore violative of public policy. He says that on the other hand if the courts place upon such letter contract the construction for which he contends, that is, that the contract was by implication to the effect that the commission on premiums should be paid to him, such construction presumes an intent to make a lawful contract, and that when confronted by such choice the courts should always construe the contract to be for a lawful purpose. Such a contention, of course, is based upon the appellee's view that said Article 3.53 is inoperative in so far as it attempts to permit corporations in the loan business to collect and retain commissions on premiums for this peculiar kind of insurance. As indicated above, we believe that Article 3.53 permits the type of transaction here evidenced, and unless the Act itself creating and providing for this special type of insurance is stricken down, then Guardian has a right to collect and retain funds as it did in this case.

At any rate, however, we can find no legal ground upon which Rollins has any claim to or right in the funds retained by Guardian. If said Article 3.53 is invalid and unconstitutional because of the constitutional inhibitions against usury, the appellee still would find himself without any claim to these funds because he became a part of the entire transaction at the time he began his employment with Guardian and began writing insurance and making loans for his employer. He would be in pari delicto with the other parties in an agreement outside the law and the courts would be unable to afford him any remedy.

We believe the trial court erred in rendering judgment for the appellee against the appellant, and such judgment is reversed and judgment is here rendered that the appellee take nothing by his suit against the appellant.

Reversed and rendered.