GUARDIAN CONSUMER FINANCE COR-
PORATION et al., Appellants,

v.

C. H. LANGDEAU, Receiver, Appellee.

No. 10669.

Court of Civil Appeals of Texas.

Austin.

June 10, 1959.

On Rehearing Nov. 18, 1959.

Second Rehearing Denied Dec. 9, 1959.

Irion, Cain, Cocke & Magee, Houston, R. Dean Moorhead, Austin, for appellants.

Cecil C. Rotsch, Herman Jones, Jack C. Eisenberg, Austin, W. G. Walley, Jr., Beaumont, for appellee.

ARCHER, Chief Justice.

This is an appeal from a summary judgment granted by the trial court against eighteen appellants, who are corporations, sixteen of whom are operating companies in the small loan business, the other two are the parent and management organizations of the sixteen operating companies. The appellee is the current statutory liquidator

of Home Life & Accident Insurance Company, (hereinafter called Home Life) having been placed in receivership March 14, 1956 by the 98th District Court of Travis County, and a receiver appointed.

This suit was filed on December 2, 1957 in the 98th District Court and in general alleged the receivership proceedings and the names of the several corporations, to-wit: Guardian Financial Corporation of Houston; Guardian Financial Corporation of Pasadena; Guardian Financial Corporation of Baytown; Guardian Financial Corporation of Harrisburg; Guardian Financial Corporation of Texas City; Guardian Financial Corporation of The Heights; Guardian Financial Corporation of South Main; Guardian Financial Corporation of Freeport; Guardian Financial Corporation of Port Arthur; Guardian Financial Corporation of Beaumont; Guardian Financial Corporation of Humble Road; Guardian Financial Corporation of South Houston; Guardian Financial Corporation of Victoria.

The petition alleged Howard V. Noll and Karl E. Wenk as the principal stockholders of Guardian Consumer Finance Corporation (hereinafter called Guardian Consumer), and organized General Administration Corporation (hereinafter called General Administration), the stock of which was owned and controlled by the Guardian Consumer; that the other sixteen corporations were formed each with a capital of $50,000 with Noll subscribing for $49,800 and two other named individuals Brans and Smith each subscribing for $100 of the stock in the corporations except in one, in which H. N. Bailey and J. A. Tracy were subscribers for $100 each of the stock, and further alleged that the several corporations were merely agents for General Administration and Guardian Consumer; further allegations were that none of the defendant corporations were licensed as insurance agents; that on March 25, 1952, certain officers of Home Life entered into an agreement with Noll acting on behalf of all of the corporations defendants contemplat-

ing an illegal scheme to violate the insurance laws of Texas and to defraud Home Life, its stockholders and creditors, of premiums by reason of the issuance of policies of credit life, health and accident insurance naming various Guardian Financial Corporations as beneficiaries.

It was further alleged that Noll, Wenk, General Administration and Guardian Consumer were actually engaged in lending money at interest through the Guardian Financial being dummy corporations under the control of General Administration and Guardian Consumer, there being a manager in each of the Guardian Financial Corporations, for whom Home Life secured an agent's license but did not agree to pay the managers' commissions as acting agents, but agreed to pay the Guardian Financial Corporations the commissions; that many policies were issued to borrowers from the Guardian Financial Corporations, naming the borrowers as insured and one of the corporations as first beneficiary; that the total gross premiums amounted to $1,131,515.23; that pursuant to an agreement the defendants remitted from time to time fifteen per cent of the total premiums and retained eighty-five per cent of such premiums.

The defendants filed a plea in abatement alleging that the receiver had no lawful authority to prosecute the suit; that Home Life was not insolvent when it was put in receivership but able to pay all of its creditors and is able at this time to do so, and that the receiver has on hand sufficient assets to pay all creditors; that the defendants Guardian Financial Corporations, who are Texas corporations and possibly Guardian Financial Corporation of Washington, Guardian Financial Corporation of Kingston and Guardian Financial Corporation of McKeesport are the only general creditors of Home Life and in event such is true this suit is in fact a suit against themselves; that if the agreement alleged plaintiff was made by Home Life and the Guardian Corporations organized under the laws of Texas and the other nonresident corporations

is in violation of the insurance laws of Texas, then Home Life would be in pari delicto and cannot maintain this suit, nor could the stockholders, and that plaintiff has no greater right than the stockholders themselves have.

Further answer was that the receiver is only vested with the rights of action which Home Life had on March 14, 1956, the date the receiver was appointed, and that under the provisions of Sec. 2(e) of Art. 21.28, V.A.T.S., the receiver can only take steps necessary to protect the rights of policyholders and claimants for the payment of creditors and claimants and that the receiver has sufficient assets on hand to pay all such creditors and claimants and sought dismissal of the cause.

The defendants lodged numerous special exceptions to plaintiffs' pleadings all of which, together with the plea in abatement, were overruled.

On September 18, 1958, plaintiff filed a motion for summary judgment stating that there were no controverted issues of fact material to the determination of this cause and that plaintiff was entitled to judgment against:

"the Defendants Guardian Consumer Finance Corporation, jointly and severally, with the following designated Defendants for the amounts set forth opposite the name of each, to-wit:

| | |
|---|---|
| "Guardian Financial Corporation of Washington and Guardian Financial Corporation of Houston | $ 24,577.65 |
| "Guardian Financial Corporation of Houston | $ 138,585.38 |
| "Guardian Financial Corporation of Kingston and Guardian Financial Corporation of Pasadena | $ 17,254.20 |
| "Guardian Financial Corporation of McKeesport and Guardian Financial Corporation of Baytown | $ 15,671.97 |
| "Guardian Financial Corporation of Baytown | $ 105,760.85 |
| "Guardian Financial Corporation of Beaumont | $ 76,901.47 |
| "Guardian Financial Corporation of Freeport | $ 129,740.24 |
| "Guardian Financial Corporation of Harrisburg | $ 69,776.79 |
| "Guardian Financial Corporation of The Heights | $ 68,913.66 |
| "Guardian Financial Corporation of Humble Road | $ 15,866.16 |
| "Guardian Financial Corration of Pasadena | $ 95,386.86 |
| "Guardian Financial Corporation of Port Arthur | $ 60,742.48 |
| "Guardian Financial Corporation of South Houston | $ 5,257.62 |
| "Guardian Financial Corporation of South Main | $ 39,308.12 |
| "Guardian Financial Corporation of Texas City | $ 69,312.31 |
| "Guardian Financial Corporation of Victoria | $ 20,532.41 |

"together with interest on said sums, respectively, at the rate of six (6%) per cent per annum from the 14th day of March, 1956 until paid, and all costs of suit."

To the motion was attached affidavits of a public accountant and an attorney of record for the plaintiff in support of such motion.

The defendants answered alleging that there were genuine issues of fact and that the motion be denied, to which was attached an affidavit of an attorney of record for defendants in support of such answer.

On October 7, 1958, the plea in abatement and the exception were overruled. The motion of plaintiff for summary judgment was granted in favor of plaintiff and against the several defendants for various amounts, except no judgment was given against Guardian Financial Corporation of Kingston and Guardian Financial Corporation of McKeesport, and it is from this judgment that the appeal is taken.

The appeal is based on eighteen points assigned as error and are that the trial court erred in holding that appellee was entitled to recover the insurance commissions involved herein and in not holding that the commissions were properly and lawfully handled; that the lending companies were authorized to keep the commissions and that Article 3.53 of the Insurance Code authorized the lending companies to keep the commissions; that the court erred in holding that Home Life, having enjoyed the benefits of the insurance for which it was paid commissions, can now recover the commissions paid for the procurement of such insurance; in not following the decision in Guardian Financial Corporation of Beaumont v. Rollins, Tex.Civ.App., 312 S. W.2d 553; in holding that Article 3.53 is violative of Section 11 of Article XVI of the Constitution, Vernon's Ann.St.; in holding, if it did, that the usury provisions of the Constitution are involved in this case and if involved such recovery could only be recovered by the borrowers; that the court erred in not sustaining the pleas of limitation; in granting a summary judgment because there were genuine issues of material facts; that there was no evidence, or the evidence was insufficient, or against the great weight and preponderance of the evidence to support the judgment against Guardian Consumer and Guardian Management or against Guardian Financial Corporation of Washington, Guardian Financial Corporation of Kingston and Guardian Financial Corporation of McKeesport, and finally that the judgment is against the great weight and preponderance of the evidence as to the other above named defendants.

Appellee has made four counterpoints to the effect that judgment was correctly granted, because the receiver was entitled to the premiums despite appellants claim, as a matter of fact and of law, and despite appellants' pleas of limitation, and because appellants admitted that they collected the premiums from the policyholders and the evidence was ample to support the judgments.

There is no question but that the several lending corporations received and kept eighty five per cent of the gross premiums and remitted fifteen per cent of such to Home Life, and if the commissions retained are illegal the judgment was correctly rendered, subject to limitations and absent any issue of fact or the plea of pari delicto.

By stipulation it was admitted:

"on every allegation of fact contained in any pleading of the [Appellants] on file herein they could offer some evidence which, if admissible, would tend to prove what they have stated here * * * we are willing to admit that they have that evidence and they could offer it, if it were heard by the Court. * * * I will go even further and stipulate that he [counsel for Appellants] could offer sufficient evidence to prove each allegation of fact to the satisfaction of the Court, if it were admissible, and that we will offer no evidence in opposition to it.

&ast; &ast; &ast; &ast; &ast; &ast;

"That Home Life & Accident Insurance Company was not at any time from the date of its organization to the present date insolvent and, in particular * * * that at the time of the filing of Cause No. 103,750, styled State of Texas v. Home Life & Accident Insurance Company, et al., in the 98 Judicial District Court of Travis County, Texas, which said suit was filed on the 14th day of March, 1956, and at the time of the entry of the judgment in said cause appointing such Receiver, which was on March 14, 1956, the assets were far in excess of the liabilities of the company. That at said time, there was no claim or assertion by the State of Texas, acting by and through the Texas Board of Insurance Commissioners, nor by any other person, that said Home Life &

Accident Insurance Company was insolvent * * *"

Home Life was authorized to and was engaged in the business of writing life, health and accident insurance in credit life and credit health and accident insurance as provided for by Article 3.53 of the Insurance Code which reads in part:

"Sec. 1, B. (1) 'Credit Life Insurance,' and 'Credit Health and Accident Insurance' mean personal insurance in which the insured are borrowers of sums of money not exceeding One Thousand ($1,000.00) Dollars from lenders who retain an interest in the insurance as security to the loan, and any other personal insurance written in connection with or as part of such loan transaction. 'Credit Health Insurance' and 'Credit Health and Accident Insurance' as used in this article shall never be taken to mean or refer to any contract insuring performance of any undertaking or agreement, and are expressly limited in their coverage to the contingencies of death or loss resulting from sickness and accident."

Guardian had an agreement or understanding with Home Life that the latter would appoint the manager of each of Guardian's offices the agent of Home Life with authority to countersign policies of credit life and credit health and accident insurance issued upon persons who borrowed money from Guardian. In most such policies, Guardian was shown as the first beneficiary, and the insured or his estate was shown as the second beneficiary.

Upon the appointment of Guardian's managers as agents, Home Life procured for them licenses from the State Board of Insurance Commissioners which authorized and empowered them to countersign life, health and accident insurance policies under their appointments.

Premiums authorized and allowed by law were charged and collected for such insur-ance. By agreement between Home Life and Guardian fifteen per cent of all premiums collected was remitted to Home Life in payment for the insurance coverage, and eighty five per cent was retained as a commission.

Appellee is a statutory receiver, with powers provided in Article 21.28 of the Insurance Code. Section 2(e) authorizes a receiver only:

"* * * to take such steps as may be necessary to conserve the assets and protect the rights of policyholders and claimants for the purpose of liquidating, rehabilitating, reinsuring, reorganizing or conserving the affairs of the insurer."

Section 9(a) of the Article provides that:

"When the receiver shall have made provision for unclaimed dividends and all of the liabilities of a stock insurance company, * * *"
the receiver shall initiate steps to turn the company back to its stockholders.

▋ Since this is an appeal from a summary judgment we accept as true the evidence in favor of appellants, together with the inferences from such evidence, and disregard contrary evidence and inferences. Gulbenkian v. Penn, 151 Tex. 412, 252 S. W.2d 929.

In a letter dated March 25, 1952, from General Administration Company of Stamford, Connecticut, signed by Howard V. Noll to Glynn E. Hall, % Home Life & Accident Insurance Company, Dallas, Texas, in which reference is made to a telephone call concerning the procedure to be followed and specifically the letter reads:

"The week before last when I was in Houston, I talked with you on the telephone and my recollection is that I discussed with you how the commissions on the insurance would be paid to us.

"I believe I suggested that the procedure we would prefer to follow would be for our Texas offices to pay you the full premium on the insurance and then you would remit the commissions monthly to us in Stamford, Connecticut. I believe you told me at that time that the procedure followed by most of our competitors in the finance business is that they withhold the commission due them and their remittance to you covers only the difference between their commission and the full premium. After giving the matter further thought, we believe that we would prefer to follow the same procedure, i. e., we withhold the commissions on the premiums and remit to you only the difference between our commission and the full premium. We understand our commission is to be 85% of the premium. Therefore, we will remit to you only 15% of the full amount of the premium."

In reply to this letter Mr. Hall wrote Mr. Noll that the procedure as outlined for paying the commissions due Home Life was entirely satisfactory.

Under the arrangements the managers of appellants' lending offices issued the policies to borrowers, each containing this provision:

"General Provisions:

"(1) Premiums are payable on or before the due date at the Home Office of the Company in Dallas, Texas, or may be paid to any duly authorized collector of the Company, but in any event, in exchange for the Company's official receipt signed by the President or Secretary of the Company and countersigned by the authorized agent."

It was stipulated that:

"It was agreed between the executive officers of Home Life and Accident Insurance Company and Howard V. Noll, of General Administration Com-

pany that each defendant Guardian Financial Corporation would be obligated for the gross premium on each policy of credit life and credit health and accident insurance issued out of each defendant Guardian Financial Corporation engaging in the loan business in the State of Texas."

The receiver's powers exist only for the protection of claimants, other creditors and policyholders, and since it admitted that further recovery of funds is not required for the protection of those above named or to pay any sum that might be due such persons then there was no necessity for the institution of this suit.

The commissions retained by the several corporations was in compliance with the agreement between Home Life and such corporations, and within the provisions of Article 3.53 of the Insurance Code.

In the case of Guardian Financial Corporation of Beaumont v. Rollins, Tex.Civ. App., 312 S.W.2d 553, 559, er. ref., N.R.E., many phases of the present litigation were decided. The Rollins case involved one of the Guardian lending corporations which is an appellant in this present case, and involved the identical commission agreements and transactions with Home Life, and the same arrangements between Guardian and its managers wherein the managers would countersign policies for borrowers.

█ The question that as a matter of law the transactions were invalid because a lending corporation could not retain insurance commissions, or because of alleged usury, was in the Rollins case.

In the Rollins case one of Guardian's former managers was contending that he and not Guardian was entitled to the commissions retained from Home Life policies, in the instant case the statutory receiver is contending that he is entitled to such commission.

Insofar as Home Life was concerned, it made no difference who received the com-

missions over and above the fifteen per cent agreed to be the amount due it for writing the policies.

We shall quote from the Rollins case to some extent, believing that the decision is a correct one, and in any event is binding on this Court.

The Beaumont Court held:

"It is evident that the employment of Rollins was that of manager of the business of Guardian of Beaumont, and that his acts in countersigning policies of credit insurance for persons who borrowed money from Guardian, with Guardian as first beneficiary of such policies, were acts incidental to and a part of his employment. * * *

* * * * * *

"The basic contention of the appellee in support of the conclusions of the trial court are to be found in his construction of Article 3.53 of the Insurance Code of Texas, as applied to this controversy. Said Article 3.53 was passed by the Legislature in 1951, and provides for the issuance of credit life insurance and credit health and accident insurance and defines those terms to mean personal insurance in which the insured are borrowers of sums of money not exceeding $1,000 from the lenders who retain an interest in the insurance as security to the loan, and any other personal insurance written in connection with or as part of such loan transaction. The Act defines various terms used therein and defines 'lender agent' as any insurance agent who may also be in the business of making loans individually or as employee, agent or officer of any person, corporation or association of persons in the loan business. It defines 'lender' as any person, firm, corporation or association of persons engaged in the business of making loans.

"Appellee contends, in support of his judgment, that since Guardian was a corporation it is therefore prohibited by Articles 21.01, 21.02, 21.05, 21.07, 21.11, and 21.21 of the Insurance Code of Texas, from acting as an agent for an insurance company and that it could not collect and retain premiums for the credit insurance involved in this suit. He points out that under Article 21.11 of said Code a licensed agent is prohibited from paying directly or indirectly commissions to anyone not licensed. He contends therefore that the construction placed upon the letter agreement between General, acting for Guardian, and Home Life was violative of said portions of the general insurance code, and, therefore, Guardian had no right to retain the monies which it had received and retained as commission on premiums collected.

* * * * * *

"Whether their action was wise or unwise, constitutional or unconstitutional, the Legislature did create or attempt to create a new type of insurance to be issued in connection with small loans. Under said Article 3.53 a corporation in the loan business is authorized to become a lender agent, to have one of its employees made an insurance agent to write credit life insurance and credit health and accident insurance, and take and retain the commissions on the premiums for such insurance. Subsections D and E of Section 1, Article 3.53, and the definitions included therein appear to make Guardian a lender and Rollins a lender agent."

In James N. Tardy Co. v. Tarver, 120 Tex. 591, 39 S.W.2d 848, 850, the court quoting from 2 Fletcher Corporations, sec. 819, p. 1791, held:

"It has been held also that while a license cannot issue to a corporation as such, it is competent for the corpora-

tion to take out a license in the name of a designated agent or employee, or agents or employees, and the latter may lawfully act in pursuance of the license."

The Court further said:

"It is true relator is an artificial person incapable of establishing a moral character. It is likewise true that it cannot solicit a policy of insurance except through the action of some person, and such person may be required by respondent to possess the qualifications required by the laws of this state."

Section 1, subd. D of Art. 3.53, reads:

" 'Lender Agent' means any insurance agent who may also be in the business of making loans individually or as employee, agent, or officer of any person, corporation, or association of persons in the loan business."

In the affidavit attached to appellant's motion in opposition to appellee's motion for summary judgment it was stated that the Board of Insurance Commissioners construed Article 3.53 as authorizing corporate lenders to retain a portion of premiums, and certain officers of the Commission instructed Home Life that it was their opinion that Article 3.53 authorized corporate lenders to retain a portion of credit life, credit health and accident insurance premiums as commissions, and for the purpose of this case we accept such statements as true and such actions constitute departmental construction.

The Legislature has met in three sessions since the departmental construction was made and has not amended Article 3.53 in this respect and it is presumed that the Legislature concurs in the interpretation. Associated Indemnity Corporation v. Oil Well Drilling Co., Tex.Civ.App., 258 S.W.2d 523, affirmed 153 Tex. 153, 264 S.W.2d 697.

Appellee makes no contention that the question of usury is in anywise involved in this case, and we do not discuss appellant's points directed to this phase of the appeal but do cite Hatridge v. Home Life & Accident Insurance Company, Tex.Civ.App., 246 S.W.2d 666.

We believe that if the payment of commissions involved herein was unauthorized or unlawful Home Life and appellants were *in pari delicto,* and such fact precludes the recovery of the commissions by appellee.

The agreement for a division of premiums was entered into by the Home Life and the Guardian corporations openly, and such action was ratified by the stockholders of Home Life and Home Life could not have recovered the eighty five per cent of such commissions prior to receivership, and the receiver has not greater powers or authority than Home Life had on March 14, 1956, the date of receivership.

The only exception to the general rule is when the receiver acts to protect innocent creditors of insolvent corporations in which instance the receiver acts in a dual capacity, as a trustee for both the stockholders and the creditors, and as trustee for the creditors he can maintain and defend actions done in fraud of creditors even though the corporation would not be permitted to do so. Shaw v. Borchers, Tex.Com.App., 46 S.W.2d 967.

The appellee in filing this suit had no greater rights than those of the stockholders and such rights that the stockholders had to the commissions were fixed as of March 14, 1956, and they had no such rights on that day.

In Vehle v. Wagner, Tex.Civ.App., 201 S.W.2d 636, 642, er. ref., N.R.E., it was held that:

"In order for plaintiffs to recover as stockholders of B–R Ranch Royalties

corporation, it must be that B–R Ranch Royalties corporation would be entitled to recover. The rights asserted by a stockholder are derivative."

The judgment of the Trial Court is reversed and judgment is here rendered for appellants.

Reversed and rendered.

On Appellee's Motion for Rehearing

PER CURIAM.

Our original opinion herein was delivered June 10, 1959. It reversed the judgment of the Trial Court and rendered judgment for appellants. Appellee thereafter timely filed his motion for rehearing and upon noting its contents we, on July 1, 1959, issued the following self explanatory directive:

"Appellee's sixth assignment of error in his Motion for Rehearing in this Court reads:

" 'The Court of Civil Appeals erred in not holding void the agreement between the officer of Home Life and Accident Insurance Company and Howard V. Noll, under which Appellants claim ownership of the insurance premiums involved, by reason of the prohibitions contained in Article XVI, Section 11, Constitution of Texas.'

"Art. XVI, Sec. 11 of the Texas Constitution defines usury and directs the Legislature to provide appropriate pains and penalties to prevent the same. Appellee's pleadings in the Trial Court do not mention 'usury.'

"Appellants have three points (6, 7, 9) addressed to the question of usury. They are in substance that the agreement involved in this case is not usurious and even if it is appellee has no right to recover the usurious interest.

"Appellee has no counterpoint asserting that the transactions here involved are usurious. In fact he disclaims any effort or attempt to recover on the ground of the agreement being usurious. We quote from his brief:

" *'Let it be made clear once and for all that the receiver is not here contending that he is entitled to recover, on behalf of his insurer, its stockholders, policyholders, creditors and claimants, even in part, on any theory of usury.* The appellee believes that in business, as well as in law, and most certainly in law, that:

" 'The word "premium" in the law of insurance, has a well settled and specific meaning which is well understood. In its proper and accepted sense it means the amount paid to the company as consideration for the insurance; the consideration for the contract of insurance; the sum which insured is required to pay.' 44 Corpus Juris Sec. 'Insurance' Sec. 340, p. 1302.

" 'Appellee brings this suit, on behalf of the insurer, its innocent stockholders, its policyholders, its creditors and other interested parties, to recover the part of all of the premiums which were admittedly and indubitably owing to the insurer by the respective insureds and which Appellants admit they collected and received and further, strangely, admit that the corporate lending Appellants were obligated to pay. *Appellee does not seek recovery on any theory of usury.* He seeks recovery only on the theory that the money sought to be recovered is made up of portions (85%) of gross premiums, that such premiums belonged to the insurer, its stockholders, policyholders, creditors, claimants and other interested parties in the insurer, prior to the time of the commencement of the receivership, at the time of the appointment of the re-

ceiver, at the time this suit was filed, and at the time this cause is submitted to this Honorable Court on appeal.

\*     \*     \*     \*     \*

"'Appellee repeats: He does not seek to recover the monies awarded him against the Appellants as usurious interest paid. He seeks to recover, and did recover in the trial court, such monies as large percentages of the gross premiums owing to the insurer in receivership. These admittedly were collected by the very lending corporate Appellants whom all Appellants admit were obligated to pay Appellee's Home Life Company. Appellee submits that the insurer, its stockholders, and certainly its policyholders, creditors and claimants, and thereafter, the Receiver on their behalf had a right to recover such parts of premiums wherever the same might be found, whether in the real agent's pockets, a national bank checking or savings account, or in the possession of Appellants. The only way usury gets into this case at all is to show groundless Appellants' claim that they are entitled to defeat Appellee's right to the percentage of premiums held by them because the same constitute "commissions" they, though not agents, claim they are authorized to receive and keep under authority of Art. 3.53, Insurance Code.' (Italics ours.)

"Under these circumstances we feel that if we have erred in not holding the agreement in suit void under the usury provision of the Constitution the blame should at least be shared by appellee. We desire to correct any error which we have made and to that end we direct:

"(1) That appellee brief the question of usury which he for the first time presents to this Court under his sixth assignment of error, supra, including, of course, any authority which he may have to recover usurious interest paid, if any.

"(2) That such brief be filed in this Court on or before September 1, 1959.

"(3) That appellants reply to such brief, if they so desire, on or before October 1, 1959.

"(4) That the parties indicate in their briefs or otherwise if further oral argument is desired."

Supplemental briefs have been filed by all parties.

■ We have concluded that it would be improper for us to determine the question of usury for the reason that conceding the transactions to be usurious the borrowers who paid usurious interest and not appellee would be the proper parties to seek its recovery.

The general rule on this subject is stated in 91 C.J.S. Usury § 71, as follows:

"Since usury laws are enacted for the protection of needy borrowers, and not to punish extortion in money lenders, the defense of usury is purely personal to the borrower, or those in privity with him, \* \* \* such as the debtor's sureties, guarantors, heirs, devisees, and personal representatives."

In Bean v. Peurifoy, Tex.Civ.App., 75 S.W.2d 489, 490, the Dallas Court of Civil Appeals stated the same rule in this language:

"Whatever statutory right or penalty may be attached to the alleged transaction, it alone involves appellee and the other alleged usurious contracting party, and will not inure to the benefit or detriment of a stranger to the transaction. The remedies of one paying usurious interest are personal to him, and he alone may recover the statutory penalties and exact the remedies flowing from such transaction."

To the same effect is Sugg v. Smith, Tex. Civ.App., 205 S.W. 363, writ refused, by this Court.

█ In fact the statute (Art. 5073, Vernon's Ann.Civ.St.) which authorizes the recovery of double the amount of usurious interest paid authorizes its recovery by "the person paying the same or his legal representative." Since appellee does not fall in either of these categories he is not entitled to recover usurious interest, if any, which may have been paid by borrowers from Guardian.

Complaint is also made of the following paragraph in our original opinion:

"The receiver's powers exist only for the protection of claimants, other creditors and policyholders, and since it admitted that further recovery of funds is not required for the protection of those above named or to pay any sum that might be due such persons then there was no necessity for the institution of this suit."

█ We have concluded to withdraw the quoted paragraph from our opinion and to insert in lieu thereof the following:

"Since it is admitted by appellee that further recovery of funds is not needed for the protection of creditors, claimants and policyholders of Home Life and Accident Insurance Company it appears that the Receiver should have surrendered the affairs of this company to an agent of its stockholders under the provisions of Art. 21.28, Insurance Code, V.A.C.S."

Appellee also assigns as error our action in rendering judgment for appellants.

Since the cause was tried in the Court below and disposed of by granting appellee's motion for summary judgment and since

appellants did not file a motion for summary judgment we have concluded that this cause should be reversed and remanded rather than reversed and rendered.[1] It is so ordered.

The motion for rehearing is granted in part and overruled in part.

---

1. This question is discussed in McDonald Texas Civil Practice, 1958 Cumulative Supplement, Vol. 4, Sec. 17.26.5, and the conclusion is reached that in situations such as we have the better practice would be to limit the judgment or order to one overruling the motion filed.